***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has shown good grounds to receive further evidence and upon reconsideration of all the evidence, the Full Commission affirms, with modification, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On or about February 15, 2002, an employee-employer relationship existed between plaintiff and defendant-employer.
2. On or about October 22, 2002, an employee-employer relationship existed between plaintiff and defendant-employer.
3. On or about February 15, 2002, while plaintiff was employed by defendant-employer, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and Zurich American Insurance insured defendant-employer. The North Carolina Industrial Commission assigned number 231968 to this claim.
4. Zurich's coverage for the employer ended on June 30, 2002, and Sedgwick James C.M.S. assumed workers' compensation management for the employer beginning on July 1, 2002.
5. On October 22, 2002, while plaintiff was employed by defendant-employer, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and defendant-employer was self-insured, with claims managed by Sedgwick James C.M.S. The North Carolina Industrial Commission assigned number 303723 to this claim.
6. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
7. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
8. The parties stipulated into evidence a packet of medical records, Industrial Commission Forms, including a Form 22, Accident Report Forms, and a claim note from Defendant Zurich American dated October 31, 2002, that were attached to the Pre-Trial Agreement and entered into evidence as stipulated exhibits 1-27.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 38 years of age. She began her employment with defendant-employer in 1995 as a Meter Reader.
2. On Friday, February 15, 2002, plaintiff sustained an injury to her back while in the course and scope of her employment as a Meter Reader II with defendant-employer. At approximately 1:30 p.m., plaintiff was directed by her supervisor to assist with a service leak at a residence at 4400 Rosser Pittman Road. Plaintiff used a shovel to dig up the line, which was near a large pine tree. At the hearing before the Deputy Commissioner, plaintiff testified that she had to dig around a very large pine tree with many roots to find the leak on the water service line. Because there were so many roots, plaintiff had to chop the roots and dig a large hole approximately four feet in diameter. After plaintiff dug up the service line, she had to tug on the line to get it fitted back together and as she did so, she felt a twinge of pain in her lower back.
3. Plaintiff reported her back injury to her supervisor, Donnie Osborne, and an accident report was completed. The Form 19,Employer's Report of Employee's Injury or Occupational Disease to theIndustrial Commission was dated February 19, 2002.
4. Plaintiff first presented to Dr. Redolfo Reyes on or about February 18, 2002. Dr. Reyes prescribed muscle relaxants and pain medication and placed plaintiff on light duty. X-rays of the lower back performed on February 18, 2002, revealed mild degenerative disc disease, with no acute abnormalities.
5. On April 9, 2002, plaintiff again presented to Dr. Reyes with continued complaints of lower back pain. Dr. Reyes referred plaintiff to a neurosurgeon, Dr. Samuel St. Clair of Neurosurgical Associates, whom she saw the next day.
6. An MRI of the lumbar spine was done on April 18, 2002, which revealed mild disk desiccation at L4-5 and L5-S1without significant loss of height; no significant disk herniation or pathology at L1-2, L2-3, and L3-4; mild to moderate focal left lateral disk protrusion at L4-5; and no significant disk herniation at L5-S1. Based upon the MRI results, and plaintiff's symptoms, on April 23, 2002, Dr. St. Clair assessed plaintiff with a left lateral disk herniation at L4-L5 with left leg radiculopathy. Dr. St. Clair continued plaintiff on light duty and scheduled an appointment for her in three weeks.
7. At her May 16, 2002, visit with Dr. St. Clair, plaintiff's symptoms and neurologic status were unchanged, but Dr. St. Clair noted plaintiff was progressively improving as to her pain. Plaintiff reported that she was now performing her regular work. At that time, Dr. St. Clair noted that he did not recommend surgery unless plaintiff's symptoms continued to worsen. Plaintiff continued her prescription pain medication including a course of steroid treatment and over-the-counter pain relievers to deal with her continued pain.
8. On June 30, 2002, between plaintiff's first date of accident on February 15, 2002, and plaintiff's second date of accident of October 22, 2002, defendant-employer changed coverage from Zurich American Insurance to being self-insured with claims administered by Sedgwick CMS.
9. Between her last visit to Dr. St. Clair on May 16, 2002, and October 22, 2002, plaintiff remained under the care of Dr. Reyes for her back. She continued taking her pain medications, and her back pain did not completely resolve. Plaintiff was seen in Dr. Reyes' office on September 30, 2002, and October 7, 14, and 21, 2002. Although her back injury was noted at the September 30th visit, her main complaints at these visits were sinus congestion and depression, for which she was prescribed Paxil.
10. On Friday, October 22, 2002, at approximately 12:30 p.m., plaintiff was instructed by her supervisor to report to a residence at 4488 Olivia Road, Sanford, North Carolina to assist another meter reader, Ken Fogelman, with a possible water leak. The leak was located and plaintiff and Mr. Fogelman took turns digging up the line. The dirt was "unusually heavy" wet red clay. The meter box was on a bank, near a ditch, where it was difficult to dig. Plaintiff was in an awkward position as she was digging, and had to lean on one knee, dig, and then place the wet dirt up on an embankment due to the slope. As plaintiff was lifting a shovel full of dirt and extending her arms to dump the load, she felt an intense and immediate pain in her neck and right shoulder. Plaintiff knew immediately that something was wrong. Ken Fogelman testified that he could see in her face that plaintiff was in pain.
11. Plaintiff reported her injury the next day to her supervisor, Donny Osborne. Mr. Osborne completed an Employee On-The-Job Accident Report (Stipulated Exhibit 19) dated October 23, 2002. Mr. Osborne noted that plaintiff had injured her lower back and her shoulder. At the hearing before the Deputy Commissioner, plaintiff confirmed this but testified that she did not remember exactly what she told her supervisor but that she had no reason to believe that he would not report it exactly as she had told him. Plaintiff further testified that her back had not stopped hurting but that her shoulder pain occurred suddenly that day.
12. A Form 18, Notice of Accident to Employer and Claim of Employee,Representative, or Dependent for Workers' Compensation Benefits was completed by Charles Hill, Harnett County Personnel Director and Risk Manager. Mr. Hill testified that because plaintiff could not write due to intense arm pain, he completed the form based on the information that plaintiff provided.
13. The Full Commission finds that on October 22, 2002, plaintiff sustained an interruption of her normal work routine when she had to dig out the water line from especially heavy soil in an awkward position
14. As plaintiff's pain was increasing, on October 28, 2002, she presented to Dr. Rodolfo Reyes, M.D., who referred her to Dr. Howard Brown with Brown Orthopaedic Surgery and Sports Medicine Center.
15. Plaintiff presented to Dr. Brown on November 12, 2002, and he diagnosed plaintiff with a partial right rotator cuff tear and right rotator tendonitis, AC strain, shoulder pain, and neck pain. Plaintiff then began a course of physical therapy to alleviate her pain and increase her functioning. A follow-up appointment was scheduled for four weeks later. When plaintiff next saw Dr. Brown on December 11, 2002, he continued her light duty restrictions and then ordered an EMG nerve conduction velocity of the right upper extremity and prescribed more pain relief medication.
16. An EMG nerve conduction study was performed on plaintiff's right arm on January 27, 2003. Right median and ulnar nerve compression was found at the wrist site. An MRI was then ordered and conducted the next day. This contrast MRI indicated a C4-C5 and C5-C6 disk protrusion with spinal cord impingement at C4-C5, and mild distortion with twisting of the cord at C5-C6.
17. On February 14, 2003, plaintiff again presented to Dr. Brown to discuss the MRI results. Dr. Brown told plaintiff that the treatment of the cervical spine took precedence, and that treatment of the shoulder should come later. Plaintiff was directed to continue her physical therapy and begin a series of epidural steroid injections, with a recheck with Dr. Brown in four weeks. She was continued on light duty work.
18. During this time, as defendant-employer, now self-insured, had not accepted the claim, plaintiff also sought treatment with Dr. James Rice, M.D. at Sandhills Orthopaedic and Spine Clinic. Dr. Rice also ordered a series of three epidural steroid injections to attempt to alleviate plaintiff's leg pain; however, by January 24, 2003, Dr. Rice found that after three injections, plaintiff still had severe right leg pain.
19. On March 12, 2003, Dr. Rice removed plaintiff from work for four weeks to attempt to maximize her function and allow her to heal. The next day, March 13, 2003, plaintiff saw Dr. Terry Schroeder, M.D., at Carolina Surgical Clinic for the continued pain she was feeling in her legs. Dr. Schroeder diagnosed plaintiff with right leg edema secondary to venous insufficiency, possibly due to prolonged sitting and riding at work.
20. After a second EMG was performed on September 15, 2003, plaintiff's bilateral arm numbness worsened, and conservative care options were exhausted. Plaintiff then underwent a C4-C5, C5-C6 anterior cervical discectomy and fusion, arthrodesis with fibular alograft and anterior plate instrumentation on June 12, 2003. Dr. Estrada Bernard, M.D., performed the surgery at UNC Hospital, upon the referral of Dr. Brown. Dr. Bernard removed plaintiff from work from June 10, 2003, until August 1, 2003, and then until October 1, 2003, for approximately 16 weeks.
21. Following her cervical surgery, plaintiff was able to turn her attention to treating her right shoulder injury and her lower back pain that had continued to persist. She continued under the care of Dr. Rice. On November 25, 2003, Dr. Rice performed a right rotator cuff repair to alleviate plaintiff's increasing shoulder pain and to repair the partial rotator cuff tear. Dr. Rice removed plaintiff from work pending her next visit on December 16, 2003.
22. With regard to her lower back, plaintiff's symptoms were not resolving. Dr. Rice suggested either a microdiscectomy at L4-L5 and L5-S1 or a fusion with insertion of rods and screws. Dr. Bernard at UNC Hospital performed a microdiscectomy at L4-L5 and L5-S1 on plaintiff on February 19, 2004, as documented by plaintiff's medical records submitted into evidence after the hearing before the Full Commission.
23. Defendant Zurich American Insurance contends that plaintiff's back injury had resolved completely, and that the injury on October 22, 2002, was the cause of all of plaintiff's subsequent additional medical problems. Defendant Zurich American Insurance further contends that defendant-employer and Sedgwick CMS are liable for these subsequent injuries, and has refused to authorize further treatment.
24. Defendant-employer and Sedgwick CMS contend that the plaintiff's neck and shoulder injuries were a direct result of her earlier injury on February 15, 2002, and that the injury on October 22, 2002, was simply an exacerbation of the previous injury on February 15, 2002. Defendant-employer and Sedgwick CMS maintain that Zurich Insurance is liable for these injuries and has refused to authorize any treatment for same.
25. With regard to the incidents of February 15, 2002, and October 22, 2002, the plaintiff's testimony, as well as that of her co-worker, Kenny Fogelman, is found to be credible.
26. Plaintiff testified and the Full Commission finds that the first accident on February 15, 2002, caused pain and injury in her lower back and the second accident on October 22, 2002, caused pain and injury primarily in her cervical and shoulder area, with continued lower back pain.
27. Dr. Rice opined and the Full Commission finds that given the majority of plaintiff's complaints after the February 15, 2002, injury were related to the back and leg, and there was no notation of shoulder complaints until after the October 22, 2002, injury, plaintiff's shoulder complaints are more likely related to the October injury.
28. The Full Commission finds based on the greater weight of the medical evidence that plaintiff sustained an injury by accident to her lower back on February 15, 2002, and an aggravation of her back injury on October 22, 2002.
29. The Full Commission finds that the greater weight of the medical evidence establishes that plaintiff's right shoulder and neck injury were caused by the accident of October 22, 2002. Prior to that incident, plaintiff had no problems with her neck or right shoulder.
30. In his April 19, 2006, deposition testimony, Dr. St. Clair was unable to opine to a reasonable degree of medical certainty whether the February 15, 2002, or the October 22, 2002, injury was the sole cause for the need for plaintiff's need for additional back surgery. He could also not opine to a reasonable degree of medical certainty whether the October 22, 2002, injury caused the worsening of her condition or whether it was a progression from the initial February 15, 2002, injury. Further, he was unable to state whether a combination of the two injuries caused plaintiff's need for surgery, including the hemilaminectomy and the subsequent fusion.
31. Similarly, Dr. Rice, in his September 21, 2005, deposition testimony, was unable to opine to a reasonable degree of medical certainty whether one of plaintiff's two injuries was the sole cause for plaintiff's subsequent surgery. Dr. Rice stated that based on the findings of the MRI from April 2002, the majority of patients with similar results, would not require surgery; however, a small group would have required surgical intervention given the findings and problems for which plaintiff was initially treated.
32. The medical evidence presented does not show the relative contribution to plaintiff's back injuries and disability resulting from the February 15, 2002, injury or the October 22, 2002, injury. Therefore, apportionment is not possible and both carriers must be jointly and severally liable for payment of plaintiff's compensation for her back injury after October 22, 2002.
33. The Industrial Commission Form 22, Statement of Days Worked andEarnings of Injured Employee included in the stipulated documents shows total wages of $24,925.10 earned in the year prior to February 15, 2002, which yields an average weekly wage of $478.02 and a compensation rate of $318.70 as of February 15, 2002.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222,224, 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989).
2. On February 15, 2002, plaintiff sustained an injury by accident to her lower back, arising out of and in the course of her employment with defendant-employer that was the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
3. Zurich-American Insurance, as the carrier on the risk at the time, is responsible for coverage for all medical expenses incurred due to plaintiff's lumbar injury of February 15, 2002, until October 22, 2002, the date of plaintiff's second compensable injury. N.C. Gen. Stat. §§97-2(19), 97-25.
4. As a direct result of the work assigned on October 22, 2002, plaintiff sustained a second injury by accident arising out of and in the course of her employment, which resulted in injury to her neck, right shoulder and an aggravation of the February 15, 2002, lower back injury. N.C. Gen. Stat. § 97-2(6).
5. At the time of the second injury on October 22, 2002, the employer was self-insured with Sedgewick CMS as the administrator. The employer through Sedgewick CMS is responsible for all medical expenses incurred due to plaintiff's cervical and right shoulder injury on October 22, 2002, including the cervical surgery and right rotator cuff repair, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Since the medical evidence does not establish which injury or whether the combined injuries are responsible for plaintiff's lumbar problem after October 22, 2002, plaintiff is entitled to have defendants, who will be jointly and severally liable, pay for all related medical expenses incurred or to be incurred for treatment of plaintiff's lower back injuries, including the hemilaminectomy and the subsequent fusion, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. As a result of both compensable injuries by accident, plaintiff has been unable to earn any wages in the same or any other employment and is entitled to total disability compensation at the rate of $318.70 per week for the periods of March 12, 2003, to April 2, 2003; June 10, 2003, to October 1, 2003; and from November 25, 2003, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29. Defendants are entitled to a credit for any wages that may have been paid to plaintiff during these periods. I.C. No. 085918, Patterson, Employee v. Davenport Company, LLC, Employer, One Beacon Insurance Company, Carrier, and/orMontgomery Mutual Insurance Company, Carrier, Defendants. (Full Commission decision filed July 29, 2003.)
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants Zurich American and the self-insured employer through its claim administrator, Sedgewick CMS shall jointly pay to plaintiff compensation in the amount of $318.70 per week for temporary total disability from March 12, 2003, to April 2, 2003; June 10, 2003, to October 1, 2003; and from November 25, 2003, and continuing until further Order of the Commission. Compensation that has accrued shall be paid in a lump sum, subject to the attorney's fee hereinafter awarded.
2. Defendant, Zurich-American Insurance, as the carrier on the risk at the time of plaintiff's February 15, 2002, compensable injury shall pay all medical expenses incurred due to plaintiff's February 15, 2002, lumbar injury until October 22, 2002, the date of plaintiff's second compensable injury.
3. Defendant-employer through its claim administrator, Sedgewick CMS shall pay all medical expenses incurred due to plaintiff's compensable cervical and right shoulder injury on October 22, 2002, including the cervical surgery and right rotator cuff repair, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
4. Defendants shall pay all related medical expenses incurred or to be incurred for treatment of plaintiff's lumbar spine as a result of plaintiff's compensable injuries on February 15, 2002, and October 22, 2002, including the hemilaminectomy and the subsequent fusion, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
5. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. Twenty-five percent of the accrued compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
6. Defendants shall pay the costs.
This the ___ day of November 2006.
 S/_______________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ THOMAS J. BOLCH COMMISSIONER